# BAUTISTA VISO LORENZO

*v.*

# PUERTO RICO SUGAR COMPANY.

San Juan, Law, No. 661.

1. The rule of the civil law with reference to liability for damages for polluting the waters of a stream is not materially different in Porto Rico from that of the common-law rule in any of the states of the Union.

2. The owners of sugar centrals have no right to permit deleterious substances to escape from their mills into the neighboring streams in quantities sufficient to damage their downstream neighbors who use the waters thereof for purposes of watering their live stock.

3. Every plaintiff whose property is being injured by the negligent act of another is in duty bound to immediately take such precautions as may be proper, to prevent the aggravation of the damages, and he cannot recover for damage accruing to him because of his own negligence in that regard.

4. In practically all civil suits for damages by reason of the negligence of a defendant, the burden is upon the plaintiff to establish by a preponderance of the evidence that the damage to him was in fact caused by the negligent act of the defendant, and this is particularly so where, on the facts in evidence, the injury may have occurred from other causes than those regarding which it is alleged defendant was negligent.

Instructions filed April 29, 1910.

*Messrs. Hord & Scoville* and *Arturo Aponte,* attorneys for plaintiff.

*Mr. T. D. Mott, Jr.,* attorney for defendant.

## Lorenzo v. Puerto Rico Sugar Co.

The facts of the case can be fully gathered from the instructions to the jury, which RODEY, Judge, gave as follows:

This is a plain action at law, under the Code, for damages. It is what would be called at the common law an action of trespass on the case. The right to bring it may be said to be founded in human rights, and arises under that ancient maxim in the law Latin, as well known to the civil as to the common law, *Sic utere tuo ut alienum non lœdas.* So use your own as not to injure another's property.

The plaintiff alleges that without any fault upon his part, and while rightfully and innocently using the stream known as Anton Ruiz, which borders the property he has under lease, and on which he was pasturing a large number of oxen and other cattle, as a drinking place for such cattle, the defendant negligently permitted the washing, refuse, and poisonous substances generally, to escape from its sugar central or factory into the stream, and so polluted and poisoned it as that all the fish therein died, and that his cattle which drank thereof became sick, and, in spite of all his best efforts to save them, seventy-four had thereof died and became a total loss to him. You will notice, gentlemen, that the evidence tended to show that in fact he lost 104 head of cattle, but as he had filed his suit for the loss of only seventy-four, and has not amended his complaint, he cannot recover for any greater number. He also adds to his complaint a claim for $500 damages for the work and labor in and about endeavoring to cure said herd of cattle. He therefore fixes his entire damages at the sum of $4,500, and asks judgment of the court for that sum, together with costs. Therefore, should you find for the plaintiff on the facts and under these instructions, that sum must be the limit of your verdict.

Lorenzo v. Puerto Rico Sugar Co.

This is the same sort of an action that you would feel you were entitled to, if your neighbor dug a deep ditch across the street in front of his house, and left it open, and put no light to guard it during the night, when he knew or ought to have known that you would walk along the street and probably be injured by falling into it. But apart from all this, a plaintiff is entitled to such an action in a proper case, under § 1803 of the Civil Code of Porto Rico, which reads as follows: "A person who, by an act or omission, causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done."

In addition to this, the Spanish law of waters, which it is contended is in force here, provides, in Title IV., chapter X., Art. 126 thereof, that "while waters run along their natural and public channels, everybody may make use thereof for drinking, washing clothes, vessels, and any other objects, bathing, and watering or bathing horses or cattle, subject to the regulations and municipal police ordinances."

Of course, you will appreciate that he who does by another does by himself, and that is the reason why, if this plaintiff has a cause of action here, and if it arose out of the negligence of the defendant in permitting the refuse from its sugar factory to drain into the river mentioned, as set forth in the evidence, and such fact was the proximate cause of the injury, it makes no difference that it may have been some particular employee of the defendant who did it. The corporation or proprietor is liable.

The case is quite simple from a legal point of view. The law regarding this sort of a case is not materially different here, in Porto Rico, from what it is in any of the states of the Union.

At the common law and in practically all of the states of the Union, riparian owners have title to land to the center line of at least non-navigable streams that border on their property, while under the civil law obtaining here, the beds of the stream belong to the government,—the title of the riparian owner ending at the water's edge, and being subject to an easement for a few yards of its width, in favor of the public, along the shore. But these facts cut little or no figure here, because under both systems the riparian landowner has a right to use the stream for all proper purposes, and the court instructs you that watering of cattle in a stream bordering on one's land is one of the best established and most ancient customs known. It was a maxim of the common law that every riparian owner could make any reasonable use of the waters of streams, but that he must let it pass his land undiminished in quantity and undeteriorated in quality, and while that doctrine, in the irrigation states of the Union, has been doubted and somewhat changed by the doctrine of prior appropriation and the right to diminish the quantity because of use, still the doctrine has nowhere obtained that any person can make such use of a stream as to unreasonably pollute the same, to the damage of his downstream neighbors, and the same, wherever it occurs, gives rise to a cause of action in any event, and to damages to innocent third-party users.

Therefore, but a few questions of fact are left for your consideration. There is evidence in the cause tending to show that plaintiff's cattle actually drank of this water, and that, by reason thereof, they became sick and died, without any negligence on the part of plaintiff, either as to permitting them to drink or as to taking care of them and endeavoring to cure them thereafter, and that the defendant did so negligently permit the pol-

Lorenzo v. Puerto Rico Sugar Co.

lution of the waters of the stream as stated, and that such pollution was the proximate cause of the injury. If you believe these facts from a preponderance of the evidence, then it is your bounden duty, under your oaths and under the law, to find for the plaintiff, and assess his damages at the reasonable value of the cattle he lost, with such damages for taking care of them within $500, as you shall ascertain it from the evidence before you, within the amounts claimed in the complaint. And if, from a preponderance of the evidence, you do not so believe, you must find for the defendant.

There is evidence in the cause tending to show that these cattle probably were made sick by drinking the stagnant water in the pasture where they were, and if you believe this, or if you believe that it has not been proved by a preponderance of the evidence,—for the burden is upon the plaintiff to make such proof,—that they in fact were lost to the plaintiff by reason of drinking the polluted waters of the river, then you should also find for the defendant, because it could not be held liable in such case.

That is all there is in the case, gentlemen. Did these particular cattle die by reason of the negligent act of the defendant in polluting the water in question, in the year 1909? If the plaintiff has not shown by a preponderance of the evidence that they did, then you must find for the defendant. If the plaintiff has shown by such preponderance of the evidence that his cattle were lost to him in that way, by the negligent act of the defendant, then he is entitled to recover their value, as stated, and you should unhesitatingly find for him.

By a preponderance of the evidence is not meant the side that has the more witnesses or the greater number of exhibits,

but it means the side upon which, in your opinion, truth and justice is, after a full, fair, and impartial consideration of all the facts and circumstances of the case.

You are further instructed that it is the duty of every plaintiff who is injured by the negligence of another, to not aggravate such injury, but to reduce it as much as possible, and therefore, if you believe that this plaintiff, after he had full knowledge that the stream was polluted, permitted additional numbers of his cattle to drink there, or that, after his cattle had partaken of it, did not take proper care of them, or make proper efforts to cure them, and that, by reason thereof, the loss was greater than it ought to have been, then you must by your verdict reduce plaintiff's damages to such extent as you shall so believe he could have prevented the same.

You are further instructed that you are the sole judges of the weight of the evidence and of the credibility to be given to the testimony of any witness, and when passing upon such evidence, you may consider the witness's manner upon the stand, his age, intelligence, situation in life, relation to the parties or the cause, and you should consider all surrounding conditions, the probability or reasonableness of the testimony, and the interest any witness may have in the result of the case.

You are warned not to be affected by anything that may have occurred during this trial, between counsel, or between counsel and the court, and not to permit yourselves to be affected simply by the desire of counsel on either side of the case, nor by your acquaintance with the plaintiff or the officers of the defendant, because the parties are entitled to exactly equal rights before you and before the court. The court itself has no opinion as to who ought to recover, but it is your duty to find the facts and

Lorenzo v. Puerto Rico Sugar Co.

apply the law to them as it has been given to you by the court in these instructions, and to return your verdict without fear or favor, after you have done so. It is always a species of moral cowardice for courts or juries to permit themselves to be affected or impressed by the excitement or desires of, or their acquaintance with, counsel or the parties, and whenever that is done, often, to that extent, the administration of justice is a failure, and both courts and juries show themselves unfit for the performance of the high duties which they take an oath to perform. No one save the jury is under oath here to find a true verdict, and no one's conscience but yours is bound thereby, and hence you should not be affected by any of the things here enumerated, but find the facts, after balancing the testimony as to truth and falsity, as fair-minded and impartial men of common sense, and, having done so, return your verdict accordingly.

It is hoped, gentlemen, that you will be able to arrive at a verdict, and that when you get to your jury room you will deliberate together, and, if one or more of you are of one opinion, that you will be able to give reasons to your brother jurors for the views you hold, and they, being in a similar position, can give reasons for the opinions they contend for, and that, by this exchange of views, you may be able to arrive at a verdict; because you must recollect that this is not a case where anybody's liberty is at stake, it being only a civil case.

You will be permitted to take to your room the complaint and the answer and all the exhibits in the way of photographs, etc., and these instructions; and you will be given two forms of verdict, one reading: We, the jury, find for the plaintiff, and assess his damages in the sum of blank dollars; and the

other reading: We, the jury, find for the defendant. When you have arrived at a verdict, you will select the form which embodies it, and cause the same to be signed by one of your number as foreman, whom you will select for that purpose, and all of you must then return it into court. The cause is with you, gentlemen.

The jury returned a verdict for the plaintiff in the sum of $1,000.